**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Antonei B. Csoka, Ph.D.,<br>Plaintiff,<br>v.<br>Food & Drug Administration,<br>Defendant. | Case No. 1:24-cv-01486-ABJ |

**Reply in Support of Defendant's**
**Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

The Food and Drug Administration's motion to dismiss spotlighted how plaintiff Antonei B. Csoka, Ph.D., had not alleged any harm, much less plausibly alleged any concrete and particularized injury from the agency's continued consideration of his citizen petition. Mot., ECF No. 8, at 2. As a result, Csoka had not met his burden to establish standing and this Court's subject-matter jurisdiction. *Id.* 1-3. In opposition, Csoka proffers two theories of injury: (1) "FDA has deprived him of a substantive response to which he has an individualized legal entitlement"; and (2) FDA "deprived him of valuable information that would benefit his academic research." Opp'n, ECF No. 9, at 1. Neither of these theories survives scrutiny. Because Csoka still has not shown Article III standing, this case should be dismissed.

## I. Any delay in response to Csoka's petition is not itself an injury in fact

Csoka opens with an argument—because "[f]ederal statutes and FDA regulations assure an interested party" of a petition response, he necessarily has standing, Opp'n 4—foreclosed by Circuit precedent. In *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 27 (D.C. Cir. 2002), the D.C. Circuit "expressly rejected the argument that an individual's status as an 'interested person'" who participated in an agency proceeding "is sufficient to confer standing" to challenge that proceeding. "Because agencies are not constrained by

Article III, they may permit" participation by those "who would not have standing to seek judicial review of the agency action"—or agency inaction, as in this case. *Id.*; *see* 5 U.S.C. § 551(13) ("'agency action' includes the . . . failure to act"). Thus, Csoka's status as an interested party who initiated an administrative proceeding "does not alone confer Article III standing." *Fund Democracy*, 278 F.3d at 27-28; *see Gettman v. DEA*, 290 F.3d 430, 433-34 (D.C. Cir. 2002) (rejecting theory of "automatic standing" for agency petitioners because the "fact that Congress may have given all interested parties the right to petition the agency does not in turn automatically confer Article III standing when that right is deprived") (cleaned up).

Next, Csoka contends that an unsatisfied "right to an agency response" is injury enough. Opp'n 5. But just like someone denied "the ability to file comments on some [agency] actions," the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). It matters not if Csoka is "legally entitled" to a ruling. Opp'n 5. "[U]nder Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). That is why a "citizen" like Csoka "may not sue based only on an asserted right to have the Government act in accordance with law." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quotation omitted); *see, e.g.*, *Common Cause v. FEC*, 108 F.3d 413, 419 (D.C. Cir. 1997) (plaintiff "cannot establish standing merely by asserting that the FEC failed to process its [administrative] complaint in accordance with law" because that would "recognize a justiciable interest in having the Executive Branch act in a lawful manner").

Csoka cites *Zivotofsky* ex rel. *Ari Z. v. Secretary of State*, 444 F.3d 614 (D.C. Cir. 2006), for a broad legal-violation theory of standing, *see* Opp'n 5, but the reliance is misplaced. Since *Zivotofsky*, the Supreme Court clarified that Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not

remotely harmful into something that is." *TransUnion*, 594 U.S. at 426; *see Summers*, 555 U.S. at 497 ("[I]njury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). A plaintiff must establish "a concrete injury even in the context of a statutory [or regulatory] violation." *TransUnion*, 594 U.S. at 426 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

Further, the D.C. Circuit subsequently confirmed that *Zivotofsky*'s standing analysis depended on the alleged violation of "a substantive right"; the plaintiff "did *not* assert a procedural injury at all." *Del. Dep't of Nat. Res. & Env't Control v. FERC*, 558 F.3d 575, 579 (D.C. Cir. 2009) (discussing *Zivotofsky*). Specifically, Zivotofsky asserted a substantive "right to have 'Israel' listed as his place of birth on his passport and on his Consular Birth Report." 444 F.3d at 619. By contrast, Csoka has *only* a procedural right to receive a response to the citizen petition, 21 C.F.R. § 10.30(e), but not a substantive right to have FDA rule on the petition in a certain way. And when a plaintiff alleges only a procedural injury, "like an agency's failure to process an administrative complaint" or petition, *Zivotofsky* "is of no help." *Campaign Legal Ctr. v. FEC*, 860 F. App'x 1, 4-5 (D.C. Cir. 2021).

Nor is it any help to relabel a paradigmatic procedural injury as substantive. FDA's failure to generate a "substantive analysis and detailed explanation" of the issues raised in the petition does not amount to a "concrete" harm. Opp'n 6. An alleged injury from "an as-yet-uncreated" response "is necessarily 'abstract' and not 'real'" and thus not "concrete." *Dep't of Educ. v. Brown*, 600 U.S. 551, 563–64 (2023) (quoting *Spokeo*, 578 U.S. at 340). Moreover, "citizens and doctors do not have standing to sue simply because *others* are allowed to engage in certain activities—at least without the plaintiffs demonstrating how they would be injured by the government's alleged under-regulation of others." *All for Hippocratic Med.*, 602 U.S. at 392–93. Yet Csoka identifies no personal harm from distribution of the drugs covered by his petition without his desired labeling or letter to healthcare providers. Opp'n 3.

Csoka also cannot draw support from past cases that "addressed challenges to the FDA's failure to provide a response to a plaintiff's petition, without noting any concern about the plaintiff's standing." Opp'n 5. None of the cases he cites, *see id.* 5-6, addressed standing whatsoever. It "is well-established" that "[w]here a court has simply assumed standing, that assumption creates no precedent upon which future litigants may rely." *Gettman*, 290 F.3d at 436. "Thus, these cases provide no basis for finding" Csoka "suffered an injury in fact, much less that [he] ha[s] standing." *Id.*

Finally, in attempting to distinguish the cases cited in FDA's motion, Csoka only confirms why he lacks standing. *See* Opp'n 6-8.[1] Csoka concedes that his purported "injury does not arise from the FDA's failure to grant his petition." *Id.* 7. In other words, he lacks the requisite "personal stake," *TransUnion*, 594 U.S. at 423, in whether FDA actually "require[s] the revision of . . . product labeling" for certain drugs or "require[s] manufacturers to inform healthcare providers" about risks of certain drugs, Opp'n 3. And if a plaintiff "has no Article III concrete interest in receiving the relief requested before the agency," he cannot "seek judicial review of an agency's decision to deny him relief," either explicitly or effectively, by not responding to the request. *Hydro Invs., Inc. v. FERC*, 351 F.3d 1192, 1197 (D.C. Cir. 2003).

At bottom, "Csoka's standing rests on his unfulfilled legal right to a response to his petition." Opp'n 8. But like the opportunity for notice-and-comment under the APA, this is just "a right in a void." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 15 (D.C.

[1] What's more, the cases cited in FDA's motion *are* on-point. *Compare* Opp'n 7 (Csoka's injury "is the deprivation of a substantive response to which he . . . is entitled")*, with Judicial Watch, Inc. v. FEC*, 293 F. Supp. 2d 41, 47-48 (D.D.C. 2003) (rejecting theory of injury based on the agency's failure to respond and "provide him with information")*, and Nat. Res. Def. Council v. Bodine*, 471 F. Supp. 3d 524, 534 (S.D.N.Y. 2020) (recognizing that "EPA's failure to comply with its statutory obligation to respond to the Petition" was not injury in fact under Article III)*, and Singh v. Napolitano*, 710 F. Supp. 2d 123, 128 (D.D.C. 2010) (requiring plaintiff to show "harm flowing from [agency] delay" beyond failure to convey "background name check" results).

Cir. 2011). Csoka "has not been independently wronged simply because" FDA has not yet responded to his petition. *Hydro Invs.*, 351 F.3d at 1197. Thus, Csoka's first theory of injury fails.

**II. Csoka has established no informational injury**

Csoka's second theory of injury, based on a deprivation of information, fares no better. "To prove an informational injury, a plaintiff must show that (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 685 (D.C. Cir. 2023). Csoka, however, shows neither.

First, Csoka has not shown a deprivation of any factual information. He does not contend FDA denied him access to "scientific literature," "safety data," or "the current labeling for the relevant products." Csoka Decl., ECF No. 9-1, at ¶ 5. And for good reason; that information is generally public.[2] Indeed, the citizen petition did not seek information disclosures from FDA. *See* Csoka Decl. ¶ 3 (petition requested that FDA require changes to certain drugs' labeling and require manufacturers to send healthcare practitioners a letter). So even at first blush, this case does not fit the mold of an informational injury, where a plaintiff "sought and w[as] denied specific agency records." *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989).

---

[2] For example, FDA maintains public databases with information about current and past drug labeling, as well as human adverse events involving drugs. FDA, *FDA's Labeling Resources for Human Prescription Drugs*, https://www.fda.gov/drugs/laws-acts-and-rules/fdas-labeling-resources-human-prescription-drugs; FDA, *FDA Adverse Event Reporting System (FAERS) Public Dashboard*, https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard.

Instead, Csoka wants FDA's "analysis of"—*i.e.*, its opinion about—"the medical and scientific issues." Csoka Decl. ¶ 5. But an informational injury sufficient for Article III standing does not exist "whenever federal agencies are not creating information a member of the public would like to have." *Found. on Econ. Trends v. Lyng*, 943 F.2d 79, 85 (D.C. Cir. 1991). An assertion of a right to agency work product "which has not been withheld or misrepresented, but simply has not yet been generated," is nothing more than a "generalized grievance" about the operation of government. *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 97–98 (D.D.C. 2000); *Friends of Animals v. Jewell*, 115 F. Supp. 3d 107, 112–13 (D.D.C. 2015), *aff'd*, 828 F.3d 989 (D.C. Cir. 2016) (plaintiff's desire "to compel" agency to make a decision "that will generate information" is an "abstract interest[] in agency compliance with the law" that does "not confer standing").

Nor is FDA required to respond with the "in-depth analysis of the medical and scientific issues" anticipated by Csoka. Csoka Decl. ¶ 5. Contrary to his belief, FDA simply must explain whether the petition has been approved, denied, or dismissed. 21 C.F.R. § 10.30(e)(2). Thus, Csoka cannot clear the first hurdle for an informational injury. *Cf. Farm Sanctuary v. U.S. Dep't of Agric.*, 664 F. Supp. 3d 334, 352 (W.D.N.Y. 2023) ("[T]he potential availability of a to-be-produced report via FOIA is too attenuated to satisfy the first requirement of a concrete informational injury.").

The second hurdle is insurmountable too. Csoka identifies no cognizable "downstream consequences from failing to receive" FDA's petition response. *TransUnion*, 594 U.S. at 441-42 (quotation omitted). Whether FDA will canvass the literature and opine on the data in a way that "would be useful for [Csoka's] work" and "assist" his future research is pure speculation. Csoka Decl. ¶¶ 5-6; *see Fed. Forest Res. Coal. v. Vilsack*, 100 F. Supp. 3d 21, 47 (D.D.C. 2015) (speculation falls "short of demonstrating an impact to a concrete interest in a manner that gives rise to 'procedural' injury for the purpose of Article III standing"). And the unrequited desire

that FDA create material for future academic endeavors is pure abstraction, which cannot satisfy Article III's "concrete-harm requirement." *TransUnion*, 594 U.S. at 424.

## CONCLUSION

For the foregoing reasons, and those in FDA's motion to dismiss, the Court should dismiss this case for lack of standing.

August 9, 2024

OF COUNSEL:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human Services

MARK RAZA
Chief Counsel

WENDY VICENTE
Deputy Chief Counsel, Litigation

SETH I. HELLER
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Senior Deputy Director, Civil Chief

HILARY K. PERKINS
Assistant Director

/s/ James W. Harlow
JAMES W. HARLOW
Senior Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
PO Box 386
Washington, DC 20044-0386
(202) 514-6786
(202) 514-8742 (fax)
james.w.harlow@usdoj.gov